RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 26a0035p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT
─────────────────

IN RE: THOMAS WILLIAM O'HARA,

*Debtor.*

─────────────────────────────────────

THOMAS WILLIAM O'HARA,

*Appellant,*

*v.*

ANDREW R. VARA, United States Trustee for Region 9,

*Appellee.*

No. 25-1203

─────────────────

Appeal from the United States District Court
for the Western District of Michigan at Grand Rapids.
No. 1:24-cv-00916—Robert J. Jonker, District Judge.

─────────────────

United States Bankruptcy Court for the Western District of Michigan at Grand Rapids.
Nos. 1:24-bk-00151—Scott W. Dales, Bankruptcy Judge.

Argued: December 9, 2025

Decided and Filed: February 11, 2026

Before: MOORE, BUSH, and DAVIS, Circuit Judges.

─────────────────

## COUNSEL

**ARGUED:** Scott F. Smith, SMITH LAW GROUP, PLLC, Farmington Hills, Michigan, for Appellant. Beth A. Levene, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellee. **ON BRIEF:** Scott F. Smith, SMITH LAW GROUP, PLLC, Farmington Hills, Michigan, for Appellant. Beth A. Levene, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., Amy L. Good, UNITED STATES DEPARTMENT OF JUSTICE, Cleveland, Ohio, for Appellee.

MOORE, J., delivered the opinion of the court in which DAVIS, J., concurred. BUSH, J. (pp. 17–21), delivered a separate dissenting opinion.

―――――――――――

**OPINION**

―――――――――――

KAREN NELSON MOORE, Circuit Judge.    Thomas O'Hara filed for Chapter 13 bankruptcy.  At a hearing on the United States Trustee's motion to dismiss, the bankruptcy court made clear its intent to convert the case to Chapter 7.  But O'Hara did not move to dismiss his Chapter 13 case until *after* the bankruptcy court had entered its conversion order.    The bankruptcy court denied both that motion to dismiss and O'Hara's subsequent Rule 60(b) motion.  The district court affirmed in its appellate capacity.  For the reasons explained below, we hold that we have jurisdiction and **AFFIRM** the decision of the district court.

## I.  BACKGROUND

Thomas O'Hara filed for Chapter 13 bankruptcy in January 2024.  Bankr. Ct. R. 1 (Voluntary Pet.).  On March 15, the appointed United States Trustee moved to dismiss O'Hara's case under 11 U.S.C. § 1307(c).  Bankr. Ct. R. 48 (Trustee Mot. to Dismiss).  As is standard, the motion advised O'Hara that his Chapter 13 case could be converted to a Chapter 7 proceeding. *Id.* at 1 ("As a result of the above Motion being made, your case could be converted to a Chapter 7 case.").  A hearing on the motion was set for May 8.  *Id.* at 2.  O'Hara responded on May 7 stating that he opposed dismissal.  Bankr. Ct. R. 66 (O'Hara Resp. in Opp'n to Trustee Mot. to Dismiss at 3).  He also made a passing reference to conversion.  *Id.* ("Conversely a dismissal *or conversion to a chapter 7* will result in no unsecured creditors being paid . . . ." (emphasis added)).

The bankruptcy court held a hearing on the U.S. Trustee's motion on May 8.  After hearing from the parties, the court concluded that there was cause to dismiss or convert the case and that conversion would be the better option.  Bankr. Ct. R. 145 (May 8 Tr. at 7–9).  Because much of the present controversy centers on the bankruptcy court's precise language, we quote from the transcript at some length.

THE COURT: So that is cause to dismiss, and, therefore, I'm converting because of what I said about the role of the independent Trustee to evaluate these things.

I will say, too, that—and I probably shouldn't, but the Court speaks to its orders. And the Debtor has an absolute right to dismiss the case. And so the case will not be converted until I enter the order converting the case. And that's all I'm going to say on that.

So my ruling, the Court's ruling, is that the motion to dismiss is granted as expressed on the record, and the case will be converted by a separate order.

\* \* \*

All right. That is the ruling of the Court.

\* \* \*

[COUNSEL FOR O'HARA]: Your Honor, it may be that I don't hear as well as I used to. But could you clarify? You're going to dismiss the case today, but you're not going to convert it? I didn't quite get that.

THE COURT: The motion to dismiss contemplates a finding of cause for dismissal. And the Statute says when the Court finds cause, it should consider whether to dismiss or convert.

And I'm finding that conversion is in the best interests of creditors.

I did say that the Court speaks to its orders, and so if I don't enter an order converting the case and you dismiss the case before then, then that's what will happen. A dismissal rather than the conversion.

That's up to you. But my order is that the case will be converted. The Debtor has an absolute right to dismiss a Chapter 13 case. Period.

[COUNSEL FOR O'HARA]: How long do we have before you produce an order?

THE COURT: I can't say. I don't know how long it will take me to prepare the order. It could be a day, could be two days.

But I would say you should act with quickness if your intention is to have the matter dismissed rather than converted.

*Id.* at 9–11. The hearing adjourned at 12:05 PM. *Id.* at 11. The bankruptcy court entered an order converting the case to Chapter 7 at 5:48 PM. Bankr. Ct. R. 68 [hereinafter May 8 Conversion Order]; *see id.* at 1 ("The Debtor has not availed himself of the dismissal right as of the signing of this Order."); *see also* Bankr. Ct. R. 70 (Mem. Decision & Order at 2) (noting the

time of filing).  At 7:12 PM, *see* Bankr. Ct. R. 70 (Mem. Decision & Order at 2), O'Hara filed a motion[1] to dismiss his Chapter 13 case under § 1307(b), noting that the case "has not been converted."  Bankr. Ct. R. 69 (Notice of Voluntary Dismissal).[2]  The bankruptcy court denied the motion the following day.  Bankr. Ct. R. 70 (Mem. Decision & Order) [hereinafter May 9 MTD Order].  The court reasoned that the conversion order "took effect upon its entry" and that "after the conversion of a case from chapter 13 to chapter 7 . . . the provisions of chapter 13 no longer 'hold[] sway.'"  *Id.* at 2 (second alteration in original) (quoting *Harris v. Viegelahn*, 575 U.S. 510, 519 (2015)).  The conversion order was entered before O'Hara's motion was filed, "and it does not matter whether the case is under the provisions of chapter 7 for an hour, a day, or a year.  Entry of the Conversion Order ended the Debtor's nearly unconditional right to dismiss the case."  *Id.*

Nearly two months later, on July 2, O'Hara filed a motion styled as a "Motion to Dismiss Case and or for Relief from Order Pursuant to Federal Rule of Procedure 60(b)(1)&(6)."  Bankr. Ct. R. 89 [hereinafter Rule 60(b) Motion].  The Rule 60(b) Motion explained that after the hearing on May 8, "Debtor's Counsel had lunch with his Debtor client to discuss if he wanted to convert or dismiss the case."  *Id.* at 2.  Counsel then drove about three hours back to his office "arriving shortly before 5:00 p.m."  *Id.*  He "addressed other matters having been out of the office all day" before preparing and filing the motion to dismiss.  *Id.*  He had "assumed that he had at least to the next morning" to file the motion, but he "soon observed that the Court earlier had converted the case to a Chapter 7."  *Id.*  The Rule 60(b) Motion asserted that "[i]n not allowing Debtor to dismiss pursuant to § 1307(b) the Court has circumvented his right not to be forced into a chapter 7 where the case has not been previously converted" and sought "dismiss[al] in order not to deprive the Debtor of the absolute right of a chapter 13 Debtor to dismiss pursuant to § 1307(b)."  *Id.* at 3.  In an attached brief, O'Hara argued that the "84 minute differential" between the entry of the conversion order and the filing of the motion to dismiss ought to be considered something akin to excusable neglect, and that the bankruptcy court was

---

[1]O'Hara improperly filed a "Notice of Voluntary Dismissal," Bankr. Ct. R. 69, but the bankruptcy court construed it as a motion.  Bankr. Ct. R. 70 (Mem. Decision and Order at 1–2).

[2]Notably, O'Hara stated that the case "has not been converted under 11 U.S.C. §§ 706, 1112, or 1208." Bankr. Ct. R. 69.  The case had been converted, of course, under § 1307(c).

obligated to give effect to O'Hara's § 1307 absolute right to dismiss.  *Id.* (Brief at 3–9).  Both the Chapter 7 Trustee and the U.S. Trustee opposed the Rule 60(b) Motion.  Bankr. Ct. R. 100 (Chapter 7 Trustee Resp.); Bankr. Ct. R. 102 (U.S. Trustee Resp.).

The bankruptcy court denied the Rule 60(b) Motion on August 7.  Bankr. Ct. R. 110 [hereinafter August 7 Order].  The court rejected O'Hara's argument that his Chapter 13 rights were abridged because O'Hara "was no longer a chapter 13 debtor" when he sought dismissal. *Id.* at 2.  The court was also unconvinced by O'Hara's "harmless error" argument.  The court's entry of the May 8 Conversion Order "was not error—the court signed the Conversion Order as soon as it was ready, as forecasted on the record." *Id.* at 3.  Finally, the court concluded that O'Hara's counsel's timing mistake should not be forgiven as excusable neglect.  *Id.* at 4.  O'Hara "was aware of the possibility of conversion, but rather than asking for dismissal in the alternative, he instead sought adjournment of the confirmation hearing, clearly indicating a desire to reorganize." *Id.*  O'Hara's counsel's opposition to dismissal "reflect[ed] his litigation strategy decisions, not an excusable mistake." *Id.* at 5.

O'Hara filed an appeal on August 21, 2024.  Bankr. Ct. R. 124 (Notice of Appeal).  The district court affirmed the decisions of the bankruptcy court.  R. 18 (Op. & Order at 2) (Page ID #835) [hereinafter D. Ct. Order].  The district court concluded that O'Hara's appeal of the May 9 MTD Order was untimely, and would fail on the merits, anyway, because the case was converted before the motion.  *Id.* at 7–9 (Page ID #840–42).  As for the August 7 Order, the district court reasoned that although the appeal was timely, it was meritless for the same reason as the May 9-MTD-Order challenge.  *Id.* at 11–12 (Page ID #844–45).  Finally, the district court agreed with the bankruptcy court that this was not a case of excusable neglect, nor did extraordinary circumstances justify relief.  *Id.* at 12–13 (Page ID #845–46).  O'Hara timely appealed to this court.

## II. JURISDICTION

In bankruptcy, as in all, cases, "[w]e have an independent obligation to ensure our jurisdiction." *Stevenson v. J.C. Bradford & Co. (In re Cannon)*, 277 F.3d 838, 852 (6th Cir. 2002).  Pursuant to 28 U.S.C. § 158(a)(1), district courts "have jurisdiction to hear appeals . . .

from final judgments, orders, and decrees . . . of bankruptcy judges entered in cases and proceedings referred to the bankruptcy judges under section 157 of this title." Thus, "a bankruptcy court's decision can be appealed if it is (1) a 'final judgment[], order[], [or] decree[],' or a qualifying interlocutory order; and (2) entered in either a 'case[]' or a 'proceeding[].'" *Ritzen Grp., Inc. v. Jackson Masonry, LLC (In re Jackson Masonry, LLC)*, 906 F.3d 494, 499 (6th Cir. 2018) (quoting 28 U.S.C. § 158(a)), *aff'd*, 589 U.S. 35 (2020). Courts of appeals "have jurisdiction of appeals from all final decisions, judgments, orders, and decrees" of the district court under § 158(a). 28 U.S.C. § 158(d)(1).[3]

## A. Scope of Notice of Appeal

Our first order of business is to determine which order(s) of the bankruptcy court O'Hara in fact appealed to the district court. O'Hara explicitly listed the May 9 MTD Order and the August 7 Order in his notice of appeal. Bankr. Ct. R. 124 (Notice of Appeal & Statement of Elections at 2). But he also attached the May 8 Conversion Order to his notice, and the parties' briefing and the courts' orders throughout the relevant litigation have heavily concerned the May 8 Conversion Order. In light of the evidence demonstrating O'Hara's intent to include the May 8 Conversion Order in his appeal, we conclude that he appealed all three orders to the district court.

We have repeatedly emphasized that notices of appeal are to be construed liberally. *See, e.g.*, *United States v. Willis*, 804 F.2d 961, 963 (6th Cir. 1986) ("The [federal] courts [of appeals] have consistently stated that failure to mention or misidentification of the ruling being appealed from does not destroy appellate jurisdiction as long as the intent to appeal is apparent and the appellee suffers no prejudice."). We addressed this issue at some length in *Caudill v. Hollan*, 431 F.3d 900 (6th Cir. 2005). There, the appellants took appeal from a district-court order and opinion dated August 11, 2004. *Id.* at 904. In their briefing, however, they also included

---

[3]The U.S. Trustee argues that we have jurisdiction over the district court's dismissal of the appeal regardless of whether the bankruptcy court's order was final and appealable. D. 29 (Appellee Suppl. Br. at 10). He is mistaken. The district court did not merely dismiss the appeal—it affirmed the decisions of the bankruptcy court. R. 18 (D. Ct. Order at 14) (Page ID #847). And we "only have jurisdiction to hear bankruptcy appeals when both the bankruptcy and district courts' orders are final." *K&B Cap., LLC v. Off. Unsecured Creditors' Comm. (In re LWD, Inc.)*, 335 F. App'x 523, 526 (6th Cir. 2009) (quoting *Taunt v. Vining (In re MTG, Inc.)*, 403 F.3d 410, 413 (6th Cir. 2005)).

arguments regarding the district court's August 28, 2003 opinion and order. *Id.* We concluded that we had jurisdiction and could "reach all relevant aspects of" the appeal. *Id.* We reasoned that the appealed August 11 order directed entry of judgment, which was "a sufficient equivalent to appealing the judgment itself." *Id.* at 905. We also held "[i]n the alternative" that "if the notice of appeal was technically deficient, . . . such a technical deficiency should not prevent us from reaching the merits of the appeal, nor does such a technical deficiency divest us of jurisdiction to hear the appeal." *Id.* Because the appellee "understood" the appellant's "inten[t] to appeal the August 23, 2003 [sic] order" she was not prejudiced, and both sides briefed their arguments. *Id.* at 907. *See also Herring v. City of Ecorse*, No. 24-1916, 2025 WL 2105263, at *6–7 (6th Cir. July 28, 2025) (holding that the court had appellate jurisdiction over the issues in the district court's ruling on a motion to dismiss despite that the appellants did not include that order in their appeal because the appellants appealed the district court's grant of summary judgment and may contest partial dismissals along the way). Our caselaw makes clear that notices of appeal should be broadly construed to encompass decisions that the appellant, by reasonable inference, intended to appeal. *Willis*, 804 F.2d at 963; *see Kline v. Mortg. Elec. Registration Sys., Inc.*, 704 F. App'x 451, 456 (6th Cir. 2017). Such intent "may be inferred from briefs and other filings." *Kline*, 704 F. App'x at 456. The appellee also must not have been prejudiced. *Willis*, 804 F.2d at 963.

Both requirements are met as to the May 8 Conversion Order in the instant case. First, O'Hara's notice of appeal, briefing, and other filings clearly evince an intent to appeal the May 8 Conversion Order. Although O'Hara listed only the May 9 MTD Order and August 7 Order in his notice of appeal, *see* Bankr. Ct. R. 124 (Notice of Appeal & Statement of Elections at 2), in so doing he referred to the May 9 MTD Order as "Memorandum of Decision and Order Re: Conversion of Case." *Id.* Additionally, he attached the conversion order, Bankr. Ct. R. 68, to his notice of appeal, along with the May 9 and August 7 orders. *See* Bankr. Ct. R. 124-3; FED. R. BANKR. P. 8003(a)(3)(B). And, in his brief before the district court, he indicated in his "Jurisdictional Statement" that his appeal was one "from the bankruptcy court's order converting a chapter 13 case to a Chapter 7 case without prejudice and the subsequent denial of the Debtor-Appellant's Motion to Dismiss." R. 15 (Corrected Appellant Br. at 5) (Page ID #700).

Second, there is no prejudice to the appellee.  The U.S. Trustee in fact *agrees* that we have jurisdiction here and that O'Hara intended to seek review of the conversion order.  *See* D. 29 (Appellee Suppl. Br. at 4–6).  As further evidence, the district court, too, recognized that O'Hara "clearly intended to appeal the conversion order[.]"  R. 18 (D. Ct. Order at 12 n.3) (Page ID #845); *see also id.* at 9 (Page ID #842) (noting that some of O'Hara's briefing appeared to be addressed to the conversion order).  We therefore conclude that O'Hara appealed the May 8 Conversion Order, the May 9 MTD Order, and the August 7 Order to the district court.

**B. Timeliness**

O'Hara's appeals of two out of three orders falter, however, on timeliness.  Under Federal Rule of Bankruptcy Procedure 8002(a)(1), a notice of appeal must be filed within 14 days of entry of the order to be appealed.  O'Hara appealed the May 8 Conversion Order and May 9 MTD Order three months late, on August 21.  The appeal is therefore untimely as to those two orders.  Although the 14-day limit in Bankruptcy Rule 8002(a)(1) is not jurisdictional, it is nonetheless mandatory, and the U.S. Trustee raised the timeliness issue before both the district court and this court.  *Tennial v. REI Nation, LLC (In re Tennial)*, 978 F.3d 1022, 1028 (6th Cir. 2022); *see* R. 16 (U.S. Trustee Br. at 19–20) (Page ID #742–43); D. 23 (Appellee Br. at 22).  We proceed to consider only the appeal of the August 7 Order.

**C. Jurisdiction Over the August 7 Order**

Having determined that O'Hara timely appealed the August 7 Order to the district court, we now address whether that order was "(1) a 'final judgment[], order[], [or] decree[],' or a qualifying interlocutory order; and (2) entered in either a 'case[]' or a 'proceeding[].'"  *In re Jackson Masonry*, 906 F.3d at 499 (quoting 28 U.S.C. § 158(a)).  The August 7 Order denied O'Hara's Rule 60(b) Motion.  Whether the August 7 Order is final and appealable depends on whether the underlying order, or orders, from which O'Hara sought relief are final and appealable.  *See K&B Cap., LLC v. Off. Unsecured Creditors' Comm. (In re LWD, Inc.)*, 335 F. App'x 523, 527 (6th Cir. 2009).  We therefore must answer the preliminary question of which order or orders underlie the August 7 Order.

The Rule 60(b) Motion is brief and far from a model of clarity. The motion describes the circumstances surrounding the filing of the motion to dismiss: the bankruptcy court's signaling of its intent to convert, O'Hara's attorney's later drafting of the motion to dismiss, and the entry of the conversion order before that motion was filed. Bankr. Ct. R. 89 (Rule 60(b) Mot. at 1–2). The motion ends by asserting that "[i]n not allowing Debtor to dismiss pursuant to § 1307(b) the Court has circumvented his right not to be forced into a chapter 7 where the case has not been previously converted" and, therefore, "[t]he case should be dismissed in order not to deprive the Debtor of the absolute right of a chapter 13 Debtor to dismiss pursuant to § 1307(b)." *Id.* at 3. The attached brief expands upon these arguments, *see, e.g.*, *id.* (Brief at 8) (asserting that "the Court prematurely converted the case"), and "requests the Court Provide Relief from its Order converting this case to a chapter 7 and dismiss the case," *id.* (Brief at 9).

The August 7 Order itself starts by recounting the relevant history—the initial entry of the conversion order, followed by the denial of the motion to dismiss and subsequent developments in the Chapter 7 proceeding. Bankr. Ct. R. 110 (August 7 Order at 1). The bankruptcy court described O'Hara's motion as arguing that the court ran afoul of his Chapter 13 right to dismiss "by too-promptly entering the Conversion Order," and that O'Hara's error in not seeking dismissal before entry of the conversion order was due to excusable neglect. *Id.* at 2. Rejecting both arguments, the court explained that because the case had already been converted to Chapter 7 at the time O'Hara moved to dismiss, he no longer had the absolute right to dismiss his case under Chapter 13. *Id.* at 2–3. As to whether the entry of the conversion order was error, the court reasoned that "conversion of a case from chapter 13 to chapter 7 affects *substantial* rights." *Id.* at 4. The court concluded that it "d[id] not regard its entry of the Conversion Order as an error, much less a harmless one without impact on 'substantial rights.'" *Id.* Finally, the court explained that O'Hara's counsel's mistake in timing should not be regarded as excusable neglect, but rather was the product of strategic decisions. *Id.* at 5–6. The bankruptcy court thus denied the motion.

Based on the text of the Rule 60(b) Motion and the August 7 Order and on the context of the case, we conclude that the August 7 Order encompasses both the May 8 Conversion Order and the May 9 MTD Order. Although the Rule 60(b) motion ultimately requests dismissal of the

case, the attached brief requests relief from the conversion order *and* requests dismissal. The conversion order is inextricably bound up with the motion to dismiss: the entire, and only, asserted basis for reversing course on the motion to dismiss is that the conversion order was entered improperly. Relief from the denial of the dismissal here would necessarily require relief from the conversion order—dismissal under Chapter 13 is possible only if the conversion to Chapter 7 is undone. Indeed, it is conversion that O'Hara ultimately seeks to avoid. The district court in this case recognized as much, noting, "[i]t is apparent from his briefing that O'Hara's Rule 60(b) request is in fact seeking relief from the Bankruptcy Court's May 8, 2024 conversion order." R. 18 (D. Ct. Order at 12 n.3) (Page ID #845). O'Hara's briefing before this court also makes clear that his intent was, and continues to be, to seek relief from the conversion order.[4] In his statement of issues, he identifies the first issue as "[w]hether the bankruptcy court erred in converting the chapter 13 case to chapter 7 . . . ." D. 22 (Appellant Br. at 2). Moreover, O'Hara did not desire dismissal until it was utterly clear that conversion was imminent, resisting it up to that point.

Understood as covering both the May 8 Conversion Order and the May 9 MTD Order, the August 7 Order on O'Hara's Rule 60(b) Motion is reviewable. We have held that orders converting a bankruptcy case to Chapter 7 are final, appealable orders. *Cal. Palms Addiction Recovery Campus, Inc. v. Vara (In re Cal. Palms Addiction Recovery Campus, Inc.)*, 87 F.4th 734, 739–40 (6th Cir. 2023).[5] Here, the May 8 Conversion Order underlies the August 7 Order. Because the former is a final, appealable order, so too is the latter.

---

[4]Relying on counsel's statement at oral argument that the bankruptcy judge was "in his right to convert" the case, the dissent suggests that O'Hara "never asked for (and does not want) substantive relief from the May 8th order" and so we cannot view his Rule 60(b) motion as asking for that relief. Dissent at 18; *see also id.* at 20. We see things differently. In our view, counsel was simply acknowledging that O'Hara's circumstances gave the bankruptcy court the ability to convert the case. But that does not mean counsel thought it *should* have been converted, much less that he was not challenging the conversion. Indeed, how else would O'Hara's Chapter 13 right to dismiss be reinstated but by undoing the May 8 Conversion Order? The dissent's insistence that O'Hara "does not want" relief from the May 8 Conversion Order, Dissent at 18, is willfully myopic. O'Hara does not desire that his motion to dismiss be treated as timely for the sake of it; he wants it to be treated as timely *so that the conversion order will have been improper*.

[5]Although *California Palms* involved conversion from Chapter 11 to Chapter 7, conversion orders from Chapter 13 to Chapter 7 should be no different. Indeed, the *California Palms* court cited Chapter 13-to-Chapter 7 cases in noting that "[o]ur sister circuits who have considered the issue agree." 87 F.4th at 740 & n.3 (citing *Rosson*

Given the unusual posture of this case, we need not (and should not) address whether the May 9 MTD Order standing alone would be a final, appealable order. First, doing so would be a purely intellectual endeavor—as discussed above, the May 8 Conversion Order and the May 9 MTD Order are inextricably intertwined.[6] The August 7 Order is not readily divisible such that we could review only the May 8 Conversion Order portion of the order and not the May 9 MTD Order portion. Second, and relatedly, this case presents unique circumstances. Because a Chapter 13 debtor does in fact have an absolute right to voluntary dismissal,[7] one struggles to imagine any circumstance in which a Chapter 13 motion to dismiss would be properly denied except for the very situation presented here, where the denial is directly tied to conversion. No wonder, then, that we have not had occasion before to address the denial of a Chapter 13 motion to dismiss.

Our sibling circuits appear to have taken a similar tact: The Second, Fifth, Eighth, and Ninth Circuits have reviewed cases in which the debtor appealed from both a denial of a motion to dismiss and a conversion order. *See Barbieri v. RAJ Acquisition Corp. (In re Barbieri)*, 199 F.3d 616 (2d Cir. 1999); *Jacobsen v. Moser (In re Jacobsen)*, 609 F.3d 647 (5th Cir. 2010); *Molitor v. Eidson (In re Molitor)*, 76 F.3d 218 (8th Cir. 1996); *Nichols v. Marana Stockyard & Livestock Mkt., Inc. (In re Nichols)*, 10 F.4th 956 (9th Cir. 2021). To be sure, these cases do not address head-on whether denials of motions to dismiss are final and appealable. But they demonstrate a tacit understanding that these are circumstances in which conversion and dismissal are firmly woven together.

---

*v. Fitzgerald (In re Rosson)*, 545 F.3d 764, 770 (9th Cir. 2008), *In re USA Baby, Inc.*, 674 F.3d 882, 883 (7th Cir. 2012), and *In re Fleurantin*, 420 F. App'x 194, 196 (3d Cir. 2011) (per curiam)).

[6]The dissent suggests that the bankruptcy court could have retroactively granted the motion to dismiss pursuant to the court's equitable powers. Dissent at 18–19. It is true that bankruptcy courts may under the right circumstances grant orders *nunc pro tunc*. *See Mitan v. Duval (In re Mitan)*, 573 F.3d 237, 246 (6th Cir. 2009). It is not clear, however, that such circumstances are present here. *Nunc pro tunc* orders may not be appropriate "when they are sought to validate an action arrived at by a process not in accordance with the [Bankruptcy] Code." 2 Collier on Bankruptcy ¶ 105.02 (16th ed. 2026). Here, the effect of granting the motion to dismiss *nunc pro tunc* would be to ratify O'Hara's improper post-conversion filing, contrary to § 1307.

[7]There is a circuit split on this issue. We have held, however, that the right is absolute and does not admit of any bad-faith exception. *Smith v. U.S. Bank Nat'l Ass'n (In re Smith)*, 999 F.3d 452, 455–56 (6th Cir. 2021).

In *In re Jacobsen*, for example, the Chapter 13 trustee moved to convert the case to Chapter 7, and the debtor "responded by filing a motion to dismiss the Chapter 13 case under § 1307(b)." 609 F.3d at 650–51. The bankruptcy court held a hearing on both motions and then issued an order denying the debtor's motion to dismiss on the grounds of bad faith and granting the trustee's motion to convert. *Id.* at 651–52. The district court affirmed. *Id.* at 652. On appeal, the Fifth Circuit stated that it had jurisdiction "over the appeal of an order converting a bankruptcy case from Chapter 13 to Chapter 7[.]" *Id.* The court described the debtor as arguing on appeal "that the bankruptcy court lacked the authority to convert to Chapter 7 . . . in light of his motion to dismiss under § 1307(b)" and "in the alternative that the bankruptcy court's finding of bad faith was clearly erroneous and cannot support conversion[.]" *Id.* The court discussed dismissal and conversion as closely interrelated, and concluded (contrary to our own circuit) that "a bankruptcy court has the discretion to grant a pending motion to convert for cause under § 1307(c) where the debtor has acted in bad faith or abused the bankruptcy process and requested dismissal under § 1307(b) in response to the motion to convert." *Id.* at 660.

And in *In re Nichols*, a creditor moved to convert the case to Chapter 7. 10 F.4th at 958. The bankruptcy court indicated its intent to do so, but agreed to delay entry of a conversion order for thirty days during which the debtors were to file delinquent tax returns and submit a new repayment plan. *Id.* at 959. The debtors did not do so and instead moved to dismiss. *Id.* The bankruptcy court denied the motion and converted the case, and the Ninth Circuit BAP affirmed. *Id.* On appeal, the Ninth Circuit addressed the issue of the bankruptcy court's denial of the debtor's motion to dismiss. *Id.* at 960–64. Although the *In re Nichols* court did not explicitly address jurisdiction, it extensively discussed its earlier opinion on the same issue, *In re Rosson*, in which the court stated, "[w]e review for abuse of discretion the bankruptcy court's ultimate decisions to deny a request for dismissal of a Chapter 13 case under § 1307(b) and to convert a case from Chapter 13 to Chapter 7." *Rosson v. Fitzgerald (In re Rosson)*, 545 F.3d 764, 771 (9th Cir. 2008).[8]

---

[8]The Ninth Circuit in *In re Rosson* had held that there was an implied bad-faith or abuse-of-process exception to a Chapter 13 debtor's absolute right to dismiss; that decision was overruled in *In re Nichols*. *In re Nichols*, 10 F.4th at 961–64.

The dissent invokes pendent appellate jurisdiction. Dissent at 19. That doctrine is an imperfect fit here given the procedural posture of an appeal of a Rule 60(b) order—the would-be pendent-jurisdiction question is essentially nested a layer below the question of our appellate jurisdiction over the August 7 Order. But the principles of pendent appellate jurisdiction, too, support our exercise of jurisdiction in this case. Under pendent appellate jurisdiction, "we may review otherwise non-appealable interlocutory issues that are 'inextricably intertwined' with matters over which we have jurisdiction." *Schnatter v. 247 Grp., LLC*, 155 F.4th 543, 554 (6th Cir. 2025). In our dissenting colleague's view, the May 8 Conversion Order and the May 9 MTD Order are not inextricably intertwined. Dissent at 19. We disagree, because the May 8 Conversion Order subsumes the May 9 MTD Order, and resolution of the former necessarily resolves the latter. *See Chaney-Snell v. Young*, 98 F.4th 699, 709 (6th Cir. 2024). As we explained, the only way O'Hara can obtain dismissal under Chapter 13 is if the Chapter 7 conversion is undone. So an O'Hara-favorable resolution of the May 8 Conversion Order would necessarily resolve the May 9 MTD Order. In other words, if O'Hara were granted relief from the May 8 Conversion Order, his case would return to Chapter 13, and he could invoke his right to dismiss. Thus, because the issues "rise [and] fall together, they are . . . adequately intertwined." *Id.*

\* \* \*

In sum, we find it sufficient in the context of this case that the August 7 Order addressed both the May 8 Conversion Order and the May 9 MTD Order, and the May 8 Conversion Order is indisputably a final, appealable order. The district court therefore had jurisdiction over O'Hara's timely appeal of the August 7 Order, and we have jurisdiction over the district court's affirmance of that order.

We emphasize, however, that our jurisdiction is limited to the August 7 Order itself. "[A]n appeal from denial of Rule 60(b) relief does not bring up the underlying judgment for review." *Amernational Indus., Inc. v. Action-Tungsram, Inc.*, 925 F.2d 970, 975 (6th Cir. 1991) (quoting *Peake v. First Nat'l Bank & Tr. Co.*, 717 F.2d 1016, 1020 (6th Cir. 1983)). The bankruptcy rules do not save review of the other orders in this case. Under Federal Rule of Bankruptcy Procedure 8002(b)(1)(D), the filing of a motion for relief under Rule 9024 (the

bankruptcy rules equivalent to Rule 60(b)) will toll the appeal clock for the underlying motion if the motion for relief *is filed within fourteen days of the underlying order.* O'Hara's Rule 60(b) motion was filed more than fourteen days after the May 8 Conversion Order and the May 9 MTD Order were entered. Accordingly, only the August 7 Order itself, which was timely appealed to the district court, is reviewable. *See Rivera v. ASUME (In re Rivera)*, 486 B.R. 574, 577 (B.A.P. 1st Cir. 2013); *Rota v. Howell Mgmt. Servs., LLC (In re Rota)*, No. SC-24-1140-CFB, 2025 WL 1235261, at *3 (B.A.P. 9th Cir. Apr. 29, 2025); *Utzman v. SunTrust Mortg., Inc. (In re Utzman)*, No. NC-15-1331-TaJuKi, 2016 WL 4254683, at *4 (B.A.P. 9th Cir. Aug. 9, 2016).

### III.  MERITS

On appeal from a district court, "[w]e 'review the decision of the bankruptcy court directly, reviewing its factual findings for clear error and its legal conclusions de novo.'" *Andrews v. Mich. Unemployment Ins. Agency*, 891 F.3d 245, 248 (6th Cir. 2018) (quoting *Suhar v. Burns (In re Burns)*, 322 F.3d 421, 425 (6th Cir. 2003)); *see Onkyo Eur. Elecs. GMBH v. Global Technovations Inc. (In re Global Technovations Inc.)*, 694 F.3d 705, 714–15 (6th Cir. 2012). We review the denial of a Rule 60(b) motion for abuse of discretion. *Holley v. Corcoran (In re Holley)*, 661 F. App'x 391, 397 (6th Cir. 2016). O'Hara's Rule 60(b) Motion invoked 60(b)(1) and 60(b)(6). He abandons any argument as to Rule 60(b)(6) on appeal, however, failing to mention the rule in his brief before this court. *See generally* D. 22 (Appellant Br.).

Rule 60(b)(1) provides for relief on the grounds of "mistake, inadvertence, surprise, or excusable neglect." FED. R. CIV. P. 60(b)(1). "[A] Rule 60(b)(1) motion is intended to provide relief in only two situations: (1) when a party has made an excusable mistake or an attorney has acted without authority, or (2) when the judge has made a substantive mistake of law or fact in the final judgment or order." *United States v. Reyes*, 307 F.3d 451, 455 (6th Cir. 2002) (citing *Cacevic v. City of Hazel Park*, 226 F.3d 483, 490 (6th Cir. 2000)). We consider three factors in determining whether relief under Rule 60(b)(1) is appropriate: "(1) culpability—that is, whether the neglect was excusable; (2) any prejudice to the opposing party; and (3) whether the party holds a meritorious underlying claim or defense. A party seeking relief must first demonstrate a lack of culpability before the court examines the remaining two factors." *Yeschick v. Mineta*, 675 F.3d 622, 628–29 (6th Cir. 2012) (citation modified). Determining whether neglect is

excusable, in turn, "involves an equitable determination that takes into account" five factors. *Jinks v. AlliedSignal, Inc.*, 250 F.3d 381, 386 (6th Cir. 2001). Courts consider "the danger of prejudice to the debtor, the length of the delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith." *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 395 (1993).

O'Hara has not shown that his failure to move for dismissal before the case was converted was the result of excusable neglect. O'Hara was on notice for months ahead of the May 8 hearing that the U.S. Trustee's motion to dismiss could result in conversion, and O'Hara could have moved to dismiss voluntarily at any time. *See* Bankr. Ct. R. 48 (Trustee Mot. to Dismiss at 1) (advising that "[a]s a result of the above Motion being made, your case could be converted to a Chapter 7 case"); *see also* Bankr. Ct. R. 66 (O'Hara Resp. in Opp'n to Trustee's Mot. to Dismiss at 3) (O'Hara arguing that "a dismissal *or conversion to a chapter 7* will result in no unsecured creditors being paid . . . ." (emphasis added)). O'Hara also could have moved to dismiss voluntarily at the May 8 hearing, but chose not to. Indeed, O'Hara's counsel almost did so, but then retracted that statement. Bankr. Ct. R. 145 (May 8 Tr. at 3). O'Hara's "strategic miscalculation" in not seeking dismissal sooner does not warrant relief. *McCurry ex rel. Turner v. Adventist Health Sys./Sunbelt, Inc.*, 298 F.3d 586, 593 (6th Cir. 2002); *see id.* at 594 ("[A] Rule 60(b) motion may not be used 'as a technique to avoid the consequences of decisions deliberately made yet later revealed to be unwise.'" (quoting *Hopper v. Euclid Manor Nursing Home, Inc.*, 867 F.2d 291, 294 (6th Cir. 1989))).

The bankruptcy court's statements during the May 8 hearing do not alter this conclusion. By warning O'Hara that the bankruptcy court intended to convert the case, but that conversion would not be effective until the order was actually entered, the court threw O'Hara a lifeline. O'Hara chose not to grab it. Despite the bankruptcy court's admonishment that O'Hara ought to act quickly if he wanted to dismiss voluntarily, O'Hara's counsel "had lunch" with O'Hara for apparently about two hours, drove back to his office, and then "addressed other matters" once he returned. *See* Bankr. Ct. R. 89 (Rule 60(b) Mot. at 2). Again, this does not amount to "excusable neglect" warranting relief under Rule 60(b)(1).

To the extent that O'Hara argues that relief is appropriate to correct the bankruptcy judge's "substantive mistake of law," *Reyes*, 307 F.3d at 455, that argument also fails. The case was converted to Chapter 7 upon entry of the May 8 Conversion Order. Once a case is converted, "no Chapter 13 provision holds sway." *Harris*, 575 U.S. at 520. Thus, § 1307 was no longer applicable and O'Hara no longer had the right to dismiss voluntarily under that provision. *See Skandis v. Moyer (In re Skandis)*, 648 B.R. 918, 923 (B.A.P. 6th Cir. 2023) ("[Section] 1307 does not grant a debtor an absolute right to dismiss a case after the case has been converted."). Accordingly, the bankruptcy court did not abuse its discretion in denying O'Hara's Rule 60(b) Motion.

## IV. CONCLUSION

For the foregoing reasons, we **AFFIRM** the decision of the district court and **REMAND** for further proceedings.

––––––––––––––––––

**DISSENT**

––––––––––––––––––

JOHN K. BUSH, Circuit Judge, dissenting.   This appeal requires us to disentangle the May 8th and May 9th orders and separately review their appealability.  When we do that, it appears to me that the latter is not a final order, and the former is outside the scope of the notice of appeal, depriving us of appellate jurisdiction over both orders.  I respectfully dissent.

A bankruptcy court's order can be appealed only if it is final under 28 U.S.C. § 158.  *See, e.g.*, *In re Jackson Masonry, LLC*, 906 F.3d 494, 498–99 (6th Cir. 2018), *aff'd sub nom. Ritzen Grp., Inc. v. Jackson Masonry, LLC*, 589 U.S. 35 (2020); *see also In re Cottrell*, 876 F.2d 540, 541 (6th Cir. 1989) (holding that we have jurisdiction only if the district court had appellate jurisdiction under § 158).  A bankruptcy court's order is final and appealable if it (1) is "entered in a proceeding" and (2) "terminat[es] that proceeding."  *Jackson Masonry*, 906 F.3d at 499 (cleaned up).  A "proceeding" can be "a discrete dispute within the overall bankruptcy case, resolved through a series of procedural steps," and "akin to a case within a case."  *Id.* at 500. And a proceeding is "terminated when the status quo is altered and the rights and obligations of the parties are fixed."  *In re Cal. Palms Addiction Recovery Campus, Inc.*, 87 F.4th 734, 740 (6th Cir. 2023) (quoting *Bullard v. Blue Hills Bank*, 575 U.S. 496, 502 (2015)) (cleaned up).

Based on these principles, I conclude we lack jurisdiction to review the May 9th order and, by extension, the August 7th order.  *See In re LWD, Inc.*, 335 F. App'x 523, 527 (6th Cir. 2009).  My reasoning is as follows.

We cannot review the May 9th order, which denied the motion to dismiss, because that order did not terminate any proceeding in the bankruptcy court.  The case remains pending, and nothing about the parties' statuses has changed.  In this respect, the denial of a motion to dismiss is just like the denial of a motion to confirm a Chapter 13 plan.  "The automatic stay persists. The parties' rights and obligations remain unsettled . . . .  The possibility of discharge lives on. 'Final' does not describe this state of affairs."  *Bullard*, 575 U.S. at 503.

Moreover, the motion itself cannot be characterized as a "proceeding" akin to an adversary proceeding, which can give rise to an appealable order when resolved. An adversary proceeding is a case within the overall bankruptcy case because it is a lawsuit that proceeds in parallel to other matters within the bankruptcy case. *See Jackson Masonry*, 906 F.3d at 500 & n.2. By contrast, a motion to dismiss a bankruptcy case pertains to the entire case itself. Put differently, it is not conceptually distinct from the other aspects of the bankruptcy case. If the motion to dismiss is granted, everything in the bankruptcy case ends. As a result, there is no way to separate the merits of the motion to dismiss from anything else—all other proceedings within the bankruptcy case live and die off the validity of the motion to dismiss.

The majority is mistaken to construe O'Hara's Rule 60(b) motion as seeking relief from the May 8th order. *See* Majority at 9–11. In the Rule 60(b) motion, O'Hara explains that he "assumed that he had at least to the next morning" to dismiss the case. Bankr. Ct. R. 89, Rule 60(b) Motion, p. 2. He complains that the bankruptcy court "treated the Debtor's attempt to dismiss as an untimely motion to dismiss under [11 U.S.C.] § 1307(b)." *Id.* And he argues that denying the motion to dismiss would deprive him of his absolute right to dismiss the case. *Id.* at p. 3. In short, O'Hara wanted the bankruptcy court to treat the motion to dismiss as having been filed before the May 8th order was entered. *See id.* at p. 2 (noting that the bankruptcy court "treated the Debtor's attempt to dismiss as an untimely motion to dismiss").

O'Hara never argues that conversion was improper on the merits or that the May 8th order was defective. Indeed, O'Hara waived any substantive challenge to the May 8th order at oral argument before us. *See* Oral Arg. Rec. at 8:40–9:35 ("The judge was in his right to convert [the case] because [O'Hara] was behind on his child support."). His only complaint is that the order was entered too early. That is not a challenge to the merits of the conversion order itself. Because O'Hara never asked for (and does not want) substantive relief from the May 8th order, we cannot interpret the Rule 60(b) motion as having sought that relief.

Additionally, the bankruptcy court could have granted the motion to dismiss without touching the May 8th order because the bankruptcy courts have the "equity power to" issue orders retroactively. *In re Pioneer Inv. Servs. Co.*, 943 F.2d 673, 675 (6th Cir. 1991), *aff'd sub nom. Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380 (1993). Under

O'Hara's theory, then, we need not address (and O'Hara need not challenge) the validity of the May 8th order. It is really the failure to retroactively grant the motion to dismiss that is at issue, not the entry of the May 8th order. And so O'Hara's Rule 60(b) motion should not be read as attacking the May 8th order.

The majority also mistakenly decides that the May 9th order is "inextricably intertwined" with the May 8th order, and is therefore final and appealable as well. Majority at 11. But we must have jurisdiction to grant "each form of relief" independently of all others. *Murthy v. Missouri*, 603 U.S. 43, 61 (2024) (quoting *TransUnion LLC v. Ramirez*, 594 U.S. 413, 431 (2021)); *see also Kellogg v. Nichols*, 149 F.4th 155, 161 (2d Cir. 2025) (applying this rule to all forms of subject matter jurisdiction). We therefore must separately determine whether we have jurisdiction over the May 9th order, even if we did have jurisdiction over the May 8th order.

The majority apparently relies on (but does not cite) the pendent appellate jurisdiction doctrine, which lets us review an interlocutory order when the final and interlocutory orders "are inextricably intertwined." *O'Bryan v. Holy See*, 556 F.3d 361, 377 n.7 (6th Cir. 2009) (quoting *Chambers v. Ohio Dep't of Hum. Servs.*, 145 F.3d 793, 797 (6th Cir. 1998)) (quotation marks omitted). But orders are inextricably intertwined only when "the appealable issue at hand cannot be resolved without addressing the nonappealable collateral issue." *Chambers*, 145 F.3d at 797.

The May 8th and May 9th orders do not fit that bill. 11 U.S.C. § 1307(c)—the provision governing the May 8th order—focuses on whether the debtor has violated the Bankruptcy Code and how to maximize the creditors' recovery. *See In re Alt*, 305 F.3d 413, 419–20 (6th Cir. 2002); *In re Brown*, 671 B.R. 461, 473–74 (Bankr. D. Md. 2025); 7 *Collier on Bankruptcy* ¶ 1112.04[7]. Meanwhile, § 1307(b)—the provision governing the May 9th order—focuses on whether the motion was properly filed and whether the case had previously been converted. *See In re Smith*, 999 F.3d 452, 455 (6th Cir. 2021); 8 *Collier on Bankruptcy* ¶ 1307.03[1]. The latter has no bearing on the former.

The majority overreads the out-of-circuit case law it cites. The Fifth Circuit in *In re Jacobsen* determined only that "[w]e have jurisdiction under 28 U.S.C. § 158(d) over the appeal of an order converting a bankruptcy case from Chapter 13 to Chapter 7," citing Eighth and Ninth

Circuit cases that held the same thing. 609 F.3d 647, 652 (5th Cir. 2010) (citing *In re Rosson*, 545 F.3d 764, 770 (9th Cir. 2008); *In re Molitor*, 76 F.3d 218, 219 (8th Cir. 1996)). Neither *Jacobsen*, nor *Rosson*, nor *Molitor* addresses whether an order denying a motion to dismiss is appealable. And neither *In re Nichols*, 10 F.4th 956 (9th Cir. 2021), nor *In re Barbieri*, 199 F.3d 616 (2d Cir. 1999), addresses jurisdiction *at all*. The majority treats our sister circuits' "drive-by jurisdictional ruling[s]"—or even *non*-rulings—as holdings when they are not. *Wilkins v. United States*, 598 U.S. 152, 160 (2023) (quoting *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 511 (2006)) (cleaned up); *see also Arbaugh*, 546 U.S. at 511; *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 91 (1998) (collecting cases). The majority's reliance on such rulings runs against the repeated, explicit contrary teachings of the Supreme Court. *See, e.g.*, *Steel Co.*, 523 U.S. at 91.

The majority's assertion that the "unique circumstances" of the case support our jurisdiction also appears mistaken. Majority at 11.**[1]** We may not "create equitable exceptions to jurisdictional requirements," so the circumstances of the case cannot support our jurisdiction. *Bowles v. Russell*, 551 U.S. 205, 214 (2007) (quotation marks omitted).

Finally, the majority wrongly concludes that the May 8th order is within the scope of the notice of appeal. *See* Majority at 6–8.**[2]** O'Hara never challenged the merits of the May 8th order in his briefing before the district court or in our court. He even *waived* any challenge to the merits of the May 8th conversion order at oral argument before us. *See* Oral Arg. Rec. at 8:40–9:35 ("The judge was in his right to convert [the case] because [O'Hara] was behind on his child support."). Liberally construing a notice of appeal does not require ignoring what the appellant says. His counsel's assertion that "[t]he judge was in his right to convert" the case, Oral Arg. Rec. at 8:40–9:35, is about as close to "I am not appealing the May 8th order" as one can get.

---

**[1]**This case is not particularly unique, either. The Bankruptcy Appellate Panels for the First, Sixth, and Tenth Circuits have all addressed the appealability of a denial of a motion to dismiss under § 1307(b). *See In re Pino*, 657 B.R. 264, 268 (B.A.P. 10th Cir. 2024); *In re Amir*, 436 B.R. 1, 8 (B.A.P. 6th Cir. 2010); *In re Sasso*, 409 B.R. 251, 254 (B.A.P. 1st Cir. 2009). And *Pino* even addressed the exact fact pattern in this case—the denial of a § 1307(b) motion filed after the case was converted from a Chapter 13 case to a Chapter 7 case. 657 B.R. at 268–69.

**[2]**The majority (at 8) makes much of the U.S. Trustee's assertion that O'Hara was trying to appeal the May 8th order. The parties, however, "cannot confer subject matter jurisdiction upon a court by their conduct or consent." *In re Erie Lackawanna Ry. Co.*, 563 F.2d 784, 792 (6th Cir. 1977). We therefore must "independent[ly] . . . ensure that" the May 8th order is within the scope of the notice of appeal. *Burt v. Playtika, Ltd.*, 132 F.4th 398, 403 (6th Cir. 2025).

That means the May 8th order is outside the scope of the notice of appeal.  We thus lack jurisdiction to review it.  *See Isert v. Ford Motor Co.*, 461 F.3d 756, 760 (6th Cir. 2006).

The majority therefore errs in addressing the timeliness of any appeal from the May 8th order.  Federal Rule of Bankruptcy Procedure 8002(a)(1) is a mandatory claims-processing rule, *In re Tennial*, 978 F.3d 1022, 1028 (6th Cir. 2020), enforcement of which is a merits question, *see Copen v. United States*, 3 F.4th 875, 880 (6th Cir. 2021).  So we may not consider whether the appeal from the May 8th order is timely.  *See United States v. Lucido*, 612 F.3d 871, 873 (6th Cir. 2010) (holding that a court may not consider the merits without jurisdiction).[3]

The May 9th order is not final and appealable, and the May 8th order is outside the scope of the notice of appeal.  I respectfully dissent because we lack jurisdiction over the appeal.

---

[3]The majority's discussion of finality and timeliness is backwards for the same reason.